UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA, FLORIDA

SABRINA POLKEY,

    Plaintiff,

v.                                      Case No.:    3:03cv56/RV/MD

TRANSTECS CORPORATION,

    Defendant.
_____/

**DEFENDANT'S TRIAL MEMORANDUM**

    DEFENDANT, TRANSTECS CORPORATION, hereby submits this Memorandum as to disputed issues of law for the trial of this matter.

**Claims at Issue**

    There are three essential claims at issue, all o which are disputed by Transtecs:

    1.    That Ms. Polkey was discriminatorily discharged on the basis of her race.

    2.    That Ms. Polkey was discharged in retaliation for her refusal to submit to the polygraph examination in violation of the Employee Polygraph Protection Act, and

    3.    That she was entitled to reasonable notice of termination, which was not given.

**Claims to be Determined Primarily on Factual Issues**

The race discrimination claim will have to be determined primarily on the basis of the disputed facts. There are few, if any, legal disputes regarding the standards or the nature of the claims at issue.

Likewise, the disputed facts will likely determine the Defendants position of the reasonable notice claim. There are few if any substantive legal disputes regarding that claim, but only whether Ms. Polkey was entitled in her job at Transtecs with reasonable notice or not and whether such notice was given.

**Legal Disputes Affecting the Employee Polygraph Protection Act Claim**

The Court has ruled in response to the Plaintiff's Motion for Partial Summary Judgment that Transtecs violated the EPPA when it "requested" Ms. Polkey to submit to a polygraph examination. There are a number of disputed facts that will have to be resolved by the jury in regard to this claim, but the legal standards to be applied are in dispute between the parties. More particularly, the parties dispute the effect of the government contract relationship between Transtecs and the United States Navy on Plaintiff;'s claims and Transtecs liability. This is especially so given the nature of the Plaintiff's conduct at issue as a supervisor of a secure mail facility and an ensuing investigation of mail was discovered to have been stolen or tampered with inside of that facility.

**The Government Contractor Defense Applicable to Product And Design Defects Should be Extended to Military And Security-Related Services Contracts**

Transtecs has raised a defense premised upon its government contract relationship to the United States Government. See *Fourth Affirmative Defense*. The Court has

considered the express statutory "government agency" exemption and held it did not apply to Transtecs. Notwithstanding that statutory construction, the same policies that have applied the government contractor defense in products and design defects cases should be extended and applied to services contracts that involve military or security functions. Once the facts of the matter are resolved by the jury, Transtecs should be able to demonstrate and the Court should rule that Transtecs is entitled to the "government contractor" defense under this contract and the facts at issue.

The government contractor defense has been applied to military related government contractors in products liability, design defect cases and other such government contract settings involving military and security issues in which the government has a substantial say, about not merely what shall be done, but <u>how</u> it shall be done. The government contractor defense is based upon a number of public policy justifications typically appearing in the military arena where the issues involved are those particularly associated with military or security competence.

Some of the stated policy justifications for the defense are:  1) to hold military contractors liable for design defects could subvert the government's immunity, allowing contractors to pass the costs of claims along to the government.  2) to hold a military contractors liable would thrust the judiciary into the making of military decisions.  3) military contractors are often unable to negotiate over specification or instructions.  4) the availability of the defense gives military contractors to work closely with military authorities in the development of specification. *Koutsoubos v. Boeing Vertol, Inc.,* 755 F.2d 352, 354-355 (3rd Cir. 1985) (discussing and applying *In Re. Agent Orange  Product*

*Liability Litigation* 534 F.Supp. 1046 (E. D. N. Y. 1982).

*In Re Agent Orange* establishes a three-part test for the government contractor defense. The defense should apply in this case where: 1) the government establishes the specification for the contracted product (or service) at issue, 2) that the product (or service) met the government specification in all material respect, 3) that the government knew as much or more as the contractor about the hazards of the product (or service) specified. *Id.* at 354. The *Agent Orange* doctrine has been limited in its application as to substantive state law claims on *Erie* principles, but recognizing that a direct conflict with federal law will preempt even valid state substantive law. See *McGuire v. Hughes Aircraft Corp.,* 912 F. 2d 67, 69 (3rd Circuit 1990) See *Boyle v. United Technologies Corp.,* 487-500 108 Supreme Court 2510 (1998). In *Boyle* the Supreme Court held that the application of *In Re Agent Orange* required the finding of a significant conflict such that the state tort law would be preempted and in such case the government contractor defense as defined by federal law will apply. *Id.* at 70. In this case, purely federal law concerns are at issue; conflict preemption analysis of claims under the EPPA is not required.

There is no reason in fact or law that under the circumstance of this case, once proved, that the government contractor defense raised by the Defendant affirmatively in this matter should not be applied. Design defects are already expressly covered by cases applying the doctrine, such as *Koutsoubos*. Extending the *In Re Agent Orange* doctrine to other military and security related services contracts is consistent with all of the policy reason behind the doctrine

Transtecs intends to prove that:

1) Transtecs did not undertake to contract for investigational services to the government.

2) The government later specified that in the conduct of an investigation directed by the government as to secure mail facility services that it would conduct polygraph examinations.

3) The evidence at trial will show that Transtecs would not have been involved at all in the polygraph examination process but for the unavailability of the government's own contracted polygraph examiner.

4) Transtecs was only involved in the polygraph examination as a result of the specific direction of the government's investigatiing agent in coordination with the contracting office supervising Transtecs' performance of its contracted services.

5) The government selected the polygraph examiner and determined the scope of examination.

6) The government is in a much better position to know the ramifications and issues with regard to the compliance with the Employee Polygraph Protection Act than is Transtecs, which does not deal in investigational services.

In short, Transtecs will show that it did what the government requested it to do, only because the government was, by fluke of circumstance, unable to do for itself. In a military services contract with security issues involved, Transtecs ought to be entitled to

prove the government contractor defense, as it relates to the government's specifications as to those services, just as though it were providing design services for part of aircraft, or a tank. The principles of *In Re Agent Orange* should be applied and extended to cover services contracts with the military, and which directly implicate security concerns in the government's specifications at issue.

The defense should apply when the government defines the specifications for the services relating to security issues. It should especially apply where the specifications as to the services form an incidental part of the overall military or security related services under the contract in question, and are not otherwise within the special competence of the independent direction or intent of the contractor, absent the government's decision, specification, or direction of the means by which such an investigation should be accomplished.

### Disputed Issue of Law as to "Employer" Statu Under the EPPA

In addition, and intertwined with the policy reasons for applying I*n re Agent Orange* to such services contracts, there is the threshold question as to whether or not Transtecs was the Plaintiff's "employer" for the purposes of the EPPA. See *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F. 3rd 721 (5th Circuit 2002). *Cavender* applied the EPPA to determine whether a polygraph examiner can be a "employer" under the EPPA. The *Calbillo* Court held, citing numerous cases, that it is the "economic reality" test, as it specifically relates to control over compliance with the requirements of the EPPA that determines the actionable "employer" for purposes of the EPPA. *Id.* at 726-727. Among others the *Calbillo* case cited to one case in this Circuit, *Fallin v. Mindis Metals, Inc.,* 865

F. Supp. 834, 840 (N.D. GA 1994).

These cases and the Court in *Calbillo* concluded that where a party goes "beyond the role of an independent entity, and exerted control, as a matter of economic reality, over the employer's compliance with the EPPA" that person or entity is an "employer" within the meaning of the EPPA act.  The factors of degree of control necessary to establish an entity as an "employer" for purposes of the EPPA is that the entity 1) decided that a polygraph examination should be administered; 2) decided which employee would be examined; 3) provided expertise or advise to the employer regarding compliance with the EPPA's requirements or the employer relied on the entity to ensure compliance; or 4) decided whether the examined employee would be subjected to disciplinary action or merely reported to the employer.  *Cavender*, 288 F. 3d. at 727-728; citing *Fallin,* 865 F. Supp. at 840.

Transtecs submits that if the Navy exerted its "economic reality" of control over Transtecs in the conduct of the investigation and influenced or decided the use, selection or scope of polygraph examination, then the Navy was, for this purpose, Ms. Polkey's "employer" within the meaning of the EPPA, and Transtecs was not.

Alternatively, and to the extent that Transtecs were deemed to be a joint employer with the Navy for this purpose, the policy reasoning behind the *In Re Agent Orange* doctrine is brought into stark relief.  The qualified immunity from liability provided by the government contractor defense avoids the "end-run" around the sovereign's immunity through the proxy of the contractor.  The need for the specific availability of this defense under the EPPA is yet more strongly illustrated by consideration of the pertinent EPPA

"employment" factor tests as decided by at least one other court in this Circuit.

                              Respectfully submitted,

                              **GEORGE R. MEAD, II**
                              Florida Bar No. 096490
                              MOORE, HILL & WESTMORELAND, P.A.
                              220 W. Garden Street, 9th Floor
                              Pensacola, Florida 32501
                              Tel: 850/434-3541
                              Fax: 850/435-7899
                              Counsel for Defendant

### **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic filing pursuant to local rules to Bradley S. Odom, and Richard D. Barlow, Kievit, Odom & Barlow, 635 West Garden Street, Pensacola, FL 32502 on this __21st___ day of July, 2004.

                              GEORGE R. MEAD, II